# IN THE COURT OF APPEALS OF IOWA

No. 21-1035
Filed September 22, 2021

**IN THE INTEREST OF A.M., L.M., T.M., and K.M.,**
**Minor Children,**

**M.M., Father,**
      Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District

Associate Judge.

A father appeals the termination of his parental rights to four children.

**AFFIRMED.**

Adam M. Stone, Urbandale, for appellant father.

Thomas J. Miller, Attorney General, and Tabitha J. Gardner, Assistant

Attorney General, for appellee State.

Nicole Garbis Nolan, Des Moines, attorney and guardian ad litem for minor

children.

Considered by Tabor, P.J., and Greer, and Badding, JJ.

**TABOR, Presiding Judge.**

The fate of siblings A.M., L.M., T.M., and K.M. rests with our court for the second time this year. In March, we affirmed the termination of their mother's parental rights based on her "continuous substance abuse over five years and four pregnancies and lack of meaningful insight about how her substance abuse affects her children." *In re A.M.*, No. 20-1685, 2021 WL 815892, at *2 (Iowa Ct. App. Mar. 3, 2021). We also rejected the option of placing sole custody with their father, Matthew. We cautioned: "The father had yet to demonstrate he could individually care for the children and set up appropriate boundaries to protect the children from the mother's ongoing substance abuse outside of a controlled setting." *Id.* at *4.

As it turns out, our concerns were justified. Matthew struggled with solo care of the four children—ages thirteen, five, three, and two years—and could not set boundaries with their mother. Noting those deficiencies, the juvenile court terminated his parental rights in July. He challenges that ruling, arguing he was ready to resume care. *See* Iowa Code § 232.116(1)(f)(4), (h)(4) (2021). He also contends termination was not in the children's best interests. *See id.* § 232.116(2). And he insists exceptions exist that would allow us to avoid termination. *See id.* § 232.116(3)(a), (b), (c). After reviewing the record anew, we reject all three claims.[1] These sentiments of the juvenile court ring true: "Despite five years of

---

[1] We review orders terminating parental rights de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). While the juvenile court's factual findings do not bind us, we give them respectful consideration, especially on credibility determinations. *Id.* The State must prove the statutory ground for termination by clear and convincing evidence. *Id.* That standard means we harbor no serious or substantial doubts about the accuracy of the legal conclusions drawn from the evidence. *Id.*

DHS[2] services and three years of Court involvement, the father cannot safely care for the children."

## I.        Facts and Prior Proceedings

We pick up the family's story where we left off in the previous appeal.  At an October 2020 hearing on the State's petition to terminate the mother's parental rights, the court set expectations for Matthew.  The court believed the children could return to the father's care in two months if he set up daycare and made other arrangements to enable him to be their sole caretaker.  The court emphasized that he must show "that he can maintain the children separate from their mother, and that he can be protective and meet their needs."

Acting on the court's expectations, in January 2021 the DHS began semi-supervised visits between Matthew and the children.  He also transported the children to and from appointments and school.  The Family Centered Services (FCS) worker observed that Matthew grew more involved and the interactions generally went well, though sometimes the children returned from the visits complaining about being hungry.

But in mid-January, a DHS worker saw the mother at Matthew's home on back-to-back days.  At first Matthew lied about her being there but then admitted that he was still seeing her.  Because the mother was expecting their fifth child, Matthew expressed concern for the baby's welfare.  He told the FCS worker it was

---

2 The Department of Human Services did a family assessment when the parents' second child, L.M., tested positive for THC at birth in 2016.  *See In re A.M.*, 2021 WL 815892, at *1 n.1.  The mother also used methamphetamine during that pregnancy.  *Id.*  The third child, T.M., likewise tested positive for THC and methamphetamine at birth in 2018.  *Id.* at *1.

"heartless" that the DHS would not allow their family to stay together. He also expressed optimism that this baby would not test positive for substances at birth because the mother was "clean" and engaged in outpatient treatment.[3]

Also in January, the grandparents, who have been caregivers for the four children, reported that Matthew was disrespectful toward them. He was upset that they did not have the children ready for school when he came to pick them up. When the DHS worker asked Matthew about the conflict, he complained the grandparents were "doing less and less, and making him do more and more." The worker explained that was the essence of becoming the primary caregiver—an explanation that upset Matthew. The FCS worker also reported that Matthew continued to "become overwhelmed" when supervising all the children.

With those events in mind, the juvenile court decided at a March permanency review hearing that Matthew still struggled to safely parent the children and set boundaries with the mother. The State then petitioned to terminate Matthew's parental rights to A.M., L.M., T.M., and K.M. under Iowa Code section 232.116(1)—paragraph (f) for the two oldest children and paragraph (h) for the two younger children.

At the April termination hearing, Matthew testified that he was trying to comply with the DHS directive that he protect the children from the risk of the mother's substance abuse. But he downplayed the extent of her addiction: "I do believe in the three years of this case that she has not actively used continuously."

---

[3] As it turns out, when the mother gave birth to G.M. in February 2021, the umbilical cord blood tested positive for amphetamines and methamphetamine. Still Matthew insisted it was a "false positive."

And he acknowledged having "romantic discussions" with the mother while she was in jail in February and March. Yet he insisted he was "no longer in a relationship with her." The juvenile court did not find his testimony to be credible, and granted the termination petition. Matthew appeals.

## II. Analysis

We analyze termination cases in three steps. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, we decide whether the State proved a ground for termination in section 232.116(1). *Id.* If so, we consider whether termination is in the best interests of the children by applying the factors in section 232.116(2). *Id.* If the best-interests test is met, we turn to the permissive factors listed in section 232.116(3) to see if any override termination. *Id.* at 41.

### A. Statutory Basis for Termination

Matthew first argues the State failed to offer clear and convincing evidence to support termination under Iowa Code section 232.116(1)(f) and (h). He focuses on the fourth element—proof that the children could not be returned to his care at the time of the termination hearing. *See In re M.W.*, 876 N.W.2d 212, 223–24 (Iowa 2016). Matthew asserts: "At the time of the second termination hearing, [he] had faithfully complied with the case permanency plan and engaged in all recommended services." He points out that he maintained sobriety, took parenting courses, attended visitation, was employed, and had appropriate housing. Indeed, it is the strength of his efforts that led the juvenile court to believe that Matthew could resume custody by early 2021.

Yet Matthew had one blind spot: he couldn't see the danger that the mother's ongoing substance abuse posed to the children. The juvenile court had

no faith that Matthew would protect them from their mother's addiction—even after her parental rights were terminated and their fifth child was born drug-exposed. We share the court's concern that Matthew's unwillingness to limit contact with the mother cannot be overlooked. Our supreme court has recognized the hazards of unaddressed methamphetamine addictions. *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). Matthew's continued association with a drug user, despite knowing it could result in the termination of his own parental rights, shows the children could not be returned to his care at the time of the hearing. *In re K.L.*, No. 15-0444, 2015 WL 4486182, at *4 (Iowa Ct. App. July 22, 2015).

On top of that, the State presented clear and convincing evidence that Matthew could not handle the supervision of all the children as their sole caregiver. Termination was proper under paragraphs (f) and (h).

### B. Best Interests

We next evaluate whether the termination of Matthew's parental rights would be in the best interests of the children under section 232.116(2). *M.W.*, 876 N.W.2d at 224. In doing so, we give "primary consideration" to their safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

Matthew asserts he has addressed the safety concerns that led to removal of the children from his care. That assertion is not entirely true. As discussed above, Matthew's bad judgment in continuing a romantic relationship with the mother poses an ongoing risk to the children. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009) ("We also are mindful of the best interests of the children who are the unintended victims of their parents' dangerous lifestyle."). The

immediate and long-term needs of the children will be best served by termination of Matthew's parental rights. The grandparents have provided stability for three years and are committed to the children. They intend to allow Matthew to stay involved with the family as long as he can be safe and remain sober.

### C. Permissive Factors

Having established termination is in the children's best interests, the last step of our analysis is to determine whether any permissive factors in section 232.116(3) apply to preclude the termination. *M.W.*, 876 N.W.2d at 225. Matthew urges three factors: (1) the grandparents have custody of the children; (2) A.M., who is over ten years old, objects to the termination; and (3) there is clear and convincing evidence that the termination would be detrimental to the children because of the closeness of their relationship with him. *See* Iowa Code § 232.116(3)(a), (b), (c); *see also In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018) (holding parent resisting termination bears burden to establish exception under section 232.116(3)).

On the first factor, our record does not show the grandparents have "legal custody" of the children. *See* Iowa Code § 232.116(3)(a); *see also In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). And even if they did, Matthew has not proved their custody is a viable reason to avoid termination of his parental rights. The grandparents are a stable force in the children's lives. They have gained insight into their daughter's addiction and have protected the children. Allowing them to move forward with adoption is the best option for the children's future.

On the second factor, the juvenile court highlighted A.M.'s inconsistent positions on the subject of terminating her father's rights. On the one hand, A.M.

told her guardian ad litem that she felt like she "didn't have a voice" in the outcome and wanted to return to her father's care. On the other hand, the thirteen-year-old told the DHS case worker that she would rather be with her siblings in the grandparents' adoptive home. So the court could not find by clear and convincing evidence that A.M. objected to the termination.

In the alternative, the court declined to apply this permissive exception based on A.M.'s need for permanency and stability.[4] We agree with the juvenile court. A.M.'s mixed feelings did not require the court to bypass termination in this situation. *See In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019).

On the third factor, we do not find clear and convincing evidence that the termination would be detrimental to the children because of the closeness of their relationship with Matthew. We do not doubt Matthew's love for the children. But our assessment centers on whether they will be "disadvantaged by termination" and whether any disadvantage outweighs Matthew's lack of protective capacity. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). Matthew had not offered sufficient evidence of that disadvantage to invoke this permissive factor.

**AFFIRMED.**

---

[4] As the oldest, A.M. has been most battered by the rough seas of parental substance abuse. Her concerning behaviors prompted the FCS worker to recommend she reengage with Behavior Health Intervention Services (BHIS), but Matthew had not arranged for that intervention by the time of the termination hearing.